2016 BNH 008
_____

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW HAMPSHIRE

In re:                                              Bk. No. 15-11359-BAH
                                                    Chapter 7

Licka Hosch,
        Debtor

Mark Cornell,
Chapter 7 Trustee,
        Plaintiff

v.                                                  Adv. No. 15-1091-BAH

Envoy Mortgage, Ltd.,
        Defendant

*Daniel C. Proctor, Esq.*                *Lawrence M. Edelman, Esq.*
*The Law Offices of Daniel C. Proctor*   *Michele E. Kenney, Esq.*
*Concord, NH*                            *Pierce Atwood LLP*
*Attorney for the Plaintiff*             *Portsmouth, NH*
                                         *Attorneys for the Defendant*

## MEMORANDUM OPINION

### I. INTRODUCTION

The matter before the Court is the Motion to Dismiss[1] filed by the defendant Envoy Mortgage, Ltd. ("Envoy") and the Trustee's Objection to the Defendant's Motion to Dismiss[2] (the "Objection"), filed by the plaintiff Mark P. Cornell (the "Trustee"), Chapter 7 trustee of the bankruptcy estate of Licka Hosch. Through his complaint, the Trustee seeks a declaration that by virtue of his recording a notice asserting rights as a lien creditor under 11 U.S.C. § 544(a) in

---

[1] Doc. No. 15.

[2] Doc. No. 20.

the appropriate registry of deeds prior to Envoy's recordation of its foreclosure deed, the estate now holds a first position lien on real property owned by Envoy.  Envoy asserts that the Trustee has failed to state a claim upon which relief can be granted because the foreclosure deed was recorded within the statutory safe harbor from intervening liens.  Alternatively, Envoy argues that the Trustee's intervening lien prevented its mortgage from being extinguished upon the recording of the foreclosure deed such that it remains superior to the lien rights asserted by the Trustee.  For the reasons set forth below, the Court grants the Motion to Dismiss.

## II. JURISDICTION

This Court has authority to exercise jurisdiction over the subject matter and the parties pursuant to 28 U.S.C. §§ 157(a), 1334, and U.S. District Court for the District of New Hampshire Local Rule 77.4(a).  This is a core proceeding under 28 U.S.C. § 157(b)(2)(K).

## III. BACKGROUND

The facts of this case are all a matter of public record and therefore, not in dispute. Instead, the parties disagree only as to the legal implications of those facts.  In order to understand the dispute, a brief explanation of the legal context framing the controversy is necessary.  The Court notes, however, that although this background informs how the present dispute arose, determination of the Motion to Dismiss does not require (or permit) resolution of all these legal issues.

A. Legal Context

Under New Hampshire law, a mortgagee foreclosing under a power of sale provision in a mortgage "shall within 60 days of the sale" record in the appropriate registry of deeds "the foreclosure deed, a copy of the notice of the sale, and his affidavit setting forth fully and particularly his acts in the premises." N.H. RSA § 479:26, I. The statute further provides that:

> If such recording is prevented by order or stay of any court or law or any provision of the United States Bankruptcy Code, the time for such recording shall be extended until 10 days after the expiration or removal of such order or stay.

Id. Upon recording, "title to the premises shall pass to the purchaser free and clear of all interests and encumbrances which do not have priority over such mortgage." N.H. RSA § 479:26, III. If, however, the mortgagee fails to record the foreclosure deed and affidavit within 60 days of the foreclosure sale, the sale is rendered "void and of no effect only as to liens or other encumbrances of record with the register of deeds for said county intervening between the day of the sale and the time of recording of said deed and affidavit." N.H. RSA § 479:26, II. Thus, the 60 day period and any extension thereof operates as a safe harbor for the mortgagee against intervening liens.

In In re Hazleton, 137 B.R. 560 (Bankr. D.N.H. 1992), Judge Yacos held that it was unnecessary to obtain relief from stay to record a foreclosure deed after a prepetition foreclosure sale. He reasoned that because a mortgagor-debtor's statutory right of redemption expires once the foreclosure auction is concluded, see N.H. RSA § 479:18, the debtor lacks any state or federal interest in the real property on the petition date, and therefore, the foreclosed property is not property of the estate protected by the automatic stay. In re Hazleton, 137 B.R. at 562. The New Hampshire Supreme Court has since cited Hazelton for the proposition that a mortgagor

does not retain any legal or equitable interest in property once a foreclosure auction is held. Barrows v. Boles, 141 N.H. 382, 393 (1996).

In In re Beeman, 235 B.R. 519, 526 (Bankr. D.N.H. 1999), however, Judge Deasy held the subsequent enactment of 11 U.S.C. § 1322(c)(1) abrogated Hazelton as it applied to Chapter 13 cases. That section provides in relevant part:

> Notwithstanding subsection (b)(2) and applicable nonbankruptcy law . . . a default with respect to, or that gave rise to, a lien on the debtor's principal residence may be cured . . . until such residence is sold at a foreclosure sale that is conducted in accordance with applicable nonbankruptcy law. . . .

11 U.S.C. § 1322(c)(1). Judge Deasy concluded that the plain language of 11 U.S.C. § 1322(b) and (c) provide an independent federal right to cure which preempts state law "with respect to when a Chapter 13 debtor's rights to cure and reinstate a principal residence mortgage are cut off." In re Beeman, 235 B.R. at 524. Focusing on the word "sold," he determined that this federal interest under 11 U.S.C. § 1322(c)(1) exists until the completion of the foreclosure process, including the recording of the foreclosure deed:

> By stating that a debtor's rights are cut off when a residence is *sold* at a foreclosure sale, the language envisions the completion of something; namely, the completion of a "sale" of property through foreclosure. The word "sale" is generally defined as the transferring of ownership and title regarding property to a buyer. Thus, the statutory language envisions a debtor's rights being terminated upon the completed transfer of title and ownership to a buyer through a foreclosure sale. Title and ownership generally pass through foreclosure upon the completion of a *process*, and not upon the occurrence of a single event such as a foreclosure auction. For example, under New Hampshire's power of sale regime, there are numerous steps that must be taken before a foreclosure sale is deemed complete and final.

Id. at 525 (emphasis in original, internal citations omitted). Accordingly, Beeman stands for the proposition that a mortgagee must obtain relief from stay in a Chapter 13 case to record a foreclosure deed despite the conclusion of a prepetition foreclosure auction. Id. at 526-27. Outside the Chapter 13 context, the applicability of Hazelton is unquestioned. Id. at 526 n.7; see

4

also In re Lakes Region Donuts, LLC, No. BR 13-11823-BAH, 2014 WL 1281507, at *10 (Bankr. D.N.H. Mar. 27, 2014) (refusing to extend the rationale of Beeman to a Chapter 11 case).

In TD Bank, N.A. v. LaPointe (In re LaPointe), 505 B.R. 589 (B.A.P. 1st Cir. 2014), the United States Bankruptcy Appellate Panel for the First Circuit criticized Beeman while reversing a decision of this court that followed Beeman's rationale.  The Panel rejected Beeman's interpretation of 11 U.S.C. § 1322(c)(1), concluding:

> "The phrase 'sold *at* a foreclosure sale' refers to a sale that occurs at a foreclosure auction."  The additional phrase "conducted in accordance with applicable nonbankruptcy law" is a requirement that the foreclosure was noticed, convened and held in compliance with applicable state laws. "To define the word 'sold' as the point at which a deed is transferred to the prevailing bidder subsequent to the date of the auction likewise removes the words 'foreclosure sale' from the statute."

In re LaPointe, 505 B.R. at 597 (emphasis in original, internal citations omitted).  The Panel determined that "even though legal title does not pass to the purchaser until the deed has been recorded," "under New Hampshire law, the foreclosure process is complete *as to the mortgagor* at the time the gavel falls at the foreclosure auction." Id. (emphasis in original).  Therefore, "a mortgagor does not have a right of redemption after the gavel has fallen and the memorandum of sale is signed," and, in the absence of a legal or equitable interest, the property is not property of the estate or subject to the automatic stay.  Id.  Notwithstanding the apparent inapplicability of the automatic stay, the Panel then remanded the matter "to the bankruptcy court for entry of an order granting the Bank's motion for relief from the automatic stay."  Id. at 598.

After LaPointe, this Court stated, albeit in dicta, that "the Beeman decision was criticized in a recent appellate decision, and therefore its precedential value may be limited."  In re Lakes Region Donuts, LLC, 2014 WL 1281507, at *10.  Ultimately, neither LaPointe nor Beeman are

5

binding on this Court and both are authority of equal persuasive value, albeit of differing views on the same issue. See Follo v. Morency, 507 B.R. 421, 430 n.5 (D. Mass. 2014); In re Dicey, 312 B.R. 456, 459 n.3 (Bankr. D.N.H. 2004); In re Virden, 279 B.R. 401, 409 n.12 (Bankr. D. Mass. 2002).

### B. Factual and Procedural History

On November 4, 2013, Licka Hosch (the "Debtor") financed the purchase of real estate located at 148 Robinson Road in Hudson, New Hampshire (the "Property") through Envoy and granted Envoy a mortgage to secure the obligation. The Debtor defaulted on the obligation, and Envoy conducted a foreclosure sale on July 30, 2015, at which it was the successful bidder. Therefore, in the absence of any stay, Envoy had until September 28, 2015 to record the foreclosure deed and affidavit in the appropriate registry without fear of any intervening liens or encumbrances. See N.H. RSA § 479:26, I.

The Debtor filed a Chapter 13 petition on August 27, 2015.[3] It is undisputed that Envoy did not record the foreclosure deed and affidavit prior to the bankruptcy filing. The Debtor filed her Schedules and Statement of Financial Affairs on September 7, 2015. She did not disclose the prepetition foreclosure on the Statement of Financial Affairs in response to question 5, which calls for the Debtor to "[l]ist all property that has been . . . sold at a foreclosure sale . . . within one year immediately preceding the commencement of this case." On Schedule A – Real Property, the Debtor listed a fee simple interest in the Property. On September 9, 2016, the Debtor filed a Chapter 13 plan in which she proposed to retain the Property, pay an estimated

---

[3] The Trustee's complaint erroneously states that the petition was filed on September 7, 2015.

prepetition arrearage of $20,308.86 through the plan, and maintain regular postpetition payments outside the plan.

On September 22, 2015, Envoy filed a motion for relief from the automatic stay (the "Motion for Relief").[4] In the Motion for Relief, Envoy asserted that notwithstanding the Debtor's proposed treatment of the Property in her plan, Envoy had foreclosed prepetition and "thus at the time of filing the Chapter 13 Petition the Property was not part of the bankruptcy estate pursuant to 11 U.S.C. § 541."[5] In support, Envoy explained:

> 13. In light of the 1st Circuit BAP decision in TD Bank. NA v. Robert LaPointe, 505 B.R. 589, BAP NO. NH 13-029 and this Court's ultimate ruling in In Re LaPointe 13-10688- BAH, it is the position of the Movant that Debtor has no ability to cure the arrearage through a Chapter 13 Plan or to otherwise retain ownership of the Property after the occurrence of the Foreclosure Sale of July 30, 2015.
>
> 14. Therefore Movant reiterates its position that the Property was not part of the Bankruptcy Estate at time of filing the Chapter 13 Petition and to the extent necessary files this Motion to clarify the Property's designation and to record the Foreclosure Deed.[6]

Envoy further clarified that it "file[d] this Motion [for Relief] in anticipation of pursuing other remedies available under state law including but not limited to eviction of the Debtor."[7] In the prayer for relief, Envoy requested the Court:

> Issue and enter an order granting relief from the automatic stay to permit the Movant to exercise its privileges, remedies and rights as with respect to certain real property including recording a foreclosure deed and or availing itself of other State Law Remedies; and, [g]rant such other and further relief as is just and proper.[8]

---

[4] Case No. 15-11359-BAH, Doc. No. 15.

[5] Id. at ¶ 12.

[6] Id. at ¶¶ 13-14.

[7] Id. at ¶ 15.

[8] Id. at ¶¶ A-B.

7

In accordance with the local rules of this Court, the Motion for Relief was noticed for hearing on October 20, 2015, with an objection deadline of October 13, 2015.  See LBR 4001-1(d), 7102(c)(1).

On October 6, 2015, the Court granted the Debtor's motion to convert her case to Chapter 7 and the Trustee was duly appointed.  The following day, October 7, 2015, the Trustee recorded in the Hillsborough County Registry of Deeds a notice asserting his rights as a lien creditor under 11 U.S.C. § 544 against the Property (the "Notice").[9]  As explained above, any stay that may have been in effect under Beeman terminated upon conversion to Chapter 7.  Therefore, assuming, *arguendo*, that the Debtor's Chapter 13 filing stayed Envoy from recording the foreclosure deed, the statutory safe harbor was automatically extended to ten days from the date of conversion: October 16, 2015.  See N.H. RSA § 479:26, I.

On October 14, 2015, in the absence of any response or objection, the Court treated the Motion for Relief as uncontested, canceled the scheduled hearing, and entered a form order granting relief from stay (the "Form Order") without further review.  See LBR 4001-1(e).  The Form Order provided:

> A motion for relief from the automatic stay was filed by Envoy Mortgage, Ltd. (Doc. No. 15) (the "Motion") pursuant to 11 U.S.C. § 362(d) in this chapter 7 case. The Motion was duly noticed upon all parties concerned with the matter to which said Motion pertains. No objection nor responsive pleading in opposition to the Motion was filed by the scheduled answer date. Accordingly it is hereby ORDERED:
>
> 1. The Motion is GRANTED.
>
> 2. Pursuant to Federal Rule of Bankruptcy Procedure 4001(a)(3), this order granting relief is stayed for 14 days.[10]

---

[9] Ex. 1, Doc. No. 1.

[10] Doc. No. 28.

By the date relief entered, Envoy had yet to record the foreclosure deed and affidavit even though, under Hazelton, it was free to do so without stay relief.

Envoy finally recorded the foreclosure deed and affidavit on November 3, 2015—a date that was: 96 days after the foreclosure; 28 days after conversion of the case; 20 days after entry of the order granting relief from stay; and 6 days after the expiration of the stay imposed by Fed. R. Bankr. P. 4001(a)(3).

On December 29, 2015, the Trustee commenced this adversary proceeding. In Counts I and II, the Trustee seeks a declaratory judgment pursuant to 11 U.S.C. § 544(a)(1) "and/or" (a)(2) that the Trustee has a first position lien on the Property that is superior to Envoy's ownership interest by virtue of his intervening lien and Envoy's untimely recordation of the foreclosure deed and affidavit. The Trustee's position in the complaint is firmly rooted in the contention that stay relief was at all times unnecessary.[11] Finally, in Count III, which is framed in terms of disallowance of a secured claim pursuant to 11 U.S.C. § 506(a)(1), the Trustee essentially requests a declaration that "Envoy's status as the mortgage holder merged, under the Common Law Doctrine of Merger, with their ownership interest in the property" such that the estate's interest in the Property has priority over Envoy's ownership interest.

On February 9, 2016, Envoy filed the Motion to Dismiss, primarily arguing that the foreclosure deed and affidavit were filed timely during the statutory safe harbor.[12] The Trustee filed the Objection on March 23, 2016, disputing Envoy's claim of timeliness and asserting, *inter alia*, that Envoy's mortgage was extinguished by the recording of the foreclosure deed such that Envoy now holds the Property subject to the Trustee's lien rights. On March 29, 2016, Envoy

---

[11] The complaint does not acknowledge that the Debtor's case was initially filed under Chapter 13, and cites LaPointe and Hazelton as the controlling law without reference to Beeman.

[12] The deadline to respond to the Trustee's complaint was extended by agreement of the parties to February 24, 2016.

9

filed a reply[13] positing that the law of this case confirms that a stay was in effect post-conversion as the necessary predicate for the Form Order.

The Court conducted a hearing on the Motion to Dismiss on March 30, 2016. After extensive oral argument from both parties, the Court took the matter under advisement.

### IV. POSITIONS OF THE PARTIES

A. Envoy

First and foremost, Envoy argues that the Motion to Dismiss must be granted because the foreclosure deed was filed timely. Envoy explains that it was compelled to seek stay relief due to the Debtor's assertion of redemption rights in her Chapter 13 plan. Envoy contends that although the Panel in LaPointe held that a Chapter 13 debtor has no right of redemption once the gavel has fallen, the Panel nonetheless "recognized that the automatic stay applied to preclude the recording of the foreclosure deed and thus remanded LaPointe to the bankruptcy court with instructions to grant relief from the automatic stay."[14] Thus, Enovy posits, it was required under both LaPointe and Beeman to seek relief from the automatic stay before recording its foreclosure deed.[15] Once the Form Order entered, Envoy remained barred from recording the foreclosure deed until October 28, 2015, when the Form Order became effective under Fed. R. Bankr. P. 4001(a)(3). Accordingly, Envoy asserts that pursuant to N.H. RSA § 479:26, it had until November 7, 2015, ten days from October 28, 2015, to record the foreclosure deed.

---

[13] Doc. No. 24.

[14] Motion to Dismiss, Doc. No. 15 at ¶ 8 (emphasis in original).

[15] Envoy further suggests that 11 U.S.C. § 541(a)(7), which defines property acquired after the commencement of the case as property of the estate, required it to seek stay relief because the estate had an inchoate interest in the Property until the safe harbor expired. This argument is internally inconsistent to the extent that it defines the estate's interest in the Property as both present on the petition date and after acquired.

10

Envoy further argues that the Trustee is barred from disputing the timeliness of the recording under the "law of the case" doctrine. In support, Envoy asserts that the predicate of the Form Order is that the automatic stay was in effect on October 14, 2015, else the Motion for Relief could not have been granted as there would have been no "controversy" over which the Court could have exercised jurisdiction. To the extent that the Form Order is just that and lacks case-specific findings, Envoy contends that the Court necessarily granted relief in all respects in the absence of any express limitation or carve-out.

In any event, Envoy asserts that the Motion to Dismiss must be granted because the Trustee's position with respect to merger of title is inconsistent with established law. Relying on Stantons v. Thompson, 49 N.H. 272, 279 (1870), and F.D.I.C. v. Holden, No. CIV. 92-455-JD, 1994 WL 263691, at *4 (D.N.H. Jan. 26, 1994), Envoy argues that under New Hampshire law, the doctrine of merger cannot apply where it would be disadvantageous to the mortgagee. Therefore, Envoy contends that the effect of the Notice preceding the alleged untimely recording the foreclosure deed is simply that the mortgage remains unforeclosed and senior as to the Trustee's intervening lien rights.

B. The Trustee

First, the Trustee argues that there was no stay in effect to bar the recording of the foreclosure deed and affidavit on the date of the Chapter 13 petition "and/or" the date of conversion. The Trustee posits that Hazelton controls the disposition of this matter because either LaPointe overruled Beeman, meaning that Hazelton always applied, or Hazelton became operative upon conversion to Chapter 7. Indeed, he further argues that Envoy cannot rely on the Form Order because the conversion of the case rendered the Motion for Relief only partially

11

moot and there were no specific findings as to the extent of the stay. Either way, he contends, Envoy's recordation was far outside the safe harbor. Additionally, the Trustee urges that Envoy should be judicially estopped from claiming there was a stay because Envoy's stated position in the Motion for Relief was that the Property was not property of the estate.

Next, the Trustee asserts that the effect of Envoy's recording of the foreclosure deed was, under N.H. RSA § 479:26, III, to merge its mortgage interest and ownership interest into a unified title. Because the recordation was outside the statutory safe harbor, he contends that unified title is now subject to the Trustee's intervening lien rights. The Trustee argues Envoy's reliance on Stantons and Holden are misplaced because Holden was wrongly decided. He asserts that the Holden court failed to recognize that the 1991 amendment to N.H. RSA § 479:26, II, supplanted the common law presumption against merger of title, meaning that upon recordation, Envoy's mortgage was extinguished and now cannot be re-foreclosed as to the Trustee's intervening lien rights. The Trustee further asserts that the doctrine of estoppel by deed now prevents Envoy from arguing that the foreclosure process is incomplete such that it could re-foreclose.

**V. DISCUSSION**

    A. The Rule 12(b)(6) Standard

Pursuant to Fed. R. Civ. P. 12(b)(6), made applicable in adversary proceedings by Bankruptcy Rule 7012(b), a court must dismiss a complaint if it fails to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009) (quoting Bell Alantic Corp. v. Twombly, 550 U.S. 544,

570 (2007)).  The court "may augment these facts and inferences with data points gleaned from documents incorporated by reference into the complaint, matters of public record, and facts susceptible to judicial notice."  Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011). Ultimately, whether to grant a motion to dismiss is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Iqbal, 556 U.S. at 663-64.

B. Timeliness of the Recording

The first question presented by this Motion to Dismiss is whether the foreclosure deed was recorded within the safe harbor.  The Court finds that it was not, regardless of whether Beeman or LaPointe are an accurate statement of the law.

Envoy conducted the foreclosure sale on July 30, 2015.  Therefore, if the recording of the foreclosure deed was not stayed by the bankruptcy filing, the initial sixty day safe harbor expired on September 28, 2015.  See N.H. RSA § 479:26, I.  It is undisputed that Envoy did not record the foreclosure deed until November 3, 2015.  Thus, for Envoy's recording to be timely, a stay must have been in effect until at least October 24, 2015, so as to render the recording within the additional ten day period under the statute.  See id.  Nevertheless, even assuming, *arguendo*, that Beeman is correct and the Chapter 13 filing prevented Envoy from recording the foreclosure deed, that stay terminated on October 6, 2015, upon the conversion of the case to Chapter 7 and Hazelton then controlled.  Accordingly, the statutory ten day extension, if applicable, would have expired no later than October 16, 2015.

Notwithstanding those facts, Envoy asserts that the Court implicitly held otherwise in the Form Order and that ruling is now law of the case.  The Court disagrees.  The Supreme Court of

the United States instructs that "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." Arizona v. California, 460 U.S. 605, 618 (1983), decision supplemented, 466 U.S. 144 (1984); see Negron-Almeda v. Santiago, 579 F.3d 45, 50 (1st Cir. 2009); United States v. Wallace, 573 F.3d 82, 87–88 (1st Cir. 2009). The central flaw in Envoy's reasoning is that the Form Order merely granted the Motion for Relief, and was not a legal ruling on the scope or extent of the stay's applicability.

Notably, the Motion for Relief requested relief from stay "to permit the Movant to exercise . . . rights as with respect to certain real property including recording a foreclosure deed and or [sic] availing itself of other State Law Remedies,"[16] which it expressly defined as including "pursuing . . . [the] eviction of the Debtor."[17] While the former would only have been stayed, if at all, in a Chapter 13 case that recognized the Debtor's right to cure and reinstate the mortgage under 11 U.S.C. § 1322(c)(1), the latter was stayed in all cases as "the commencement or continuation of a judicial proceeding against the debtor" or an "act to obtain possession . . . of property from the estate." 11 U.S.C. § 362(a)(2), (3). Thus, contrary to Envoy's assertions, a factual predicate for the Form Order existed on October 14, 2015, even if Envoy was no longer stayed from recording the foreclosure deed.

Envoy counters that the Form Order must be read to have granted all relief requested in the Motion for Relief. Specifically, Envoy argues that because the Form Order did not acknowledge that Hazelton rendered part of the Motion for Relief moot, the Court necessarily granted Envoy relief from stay to record its foreclosure deed as requested and, in doing so, confirmed that the automatic stay had prevented such action. This argument, however, fundamentally misapprehends the issue the Motion for Relief placed before the Court. Envoy

---

[16] Motion for Relief, Case No. 15-11359-BAH, Doc. No. 15 at ¶ A.

[17] Id. at ¶ 15.

14

did not request a ruling as to the applicability of the stay, only that it be lifted to permit Envoy to take certain acts.  In the Court's view, the Form Order does no more than lift the stay to the extent the stay actually applied on October 14, 2015.  To the extent that the stay did not apply to certain acts identified in the Motion for Relief, the Court was not required to render an advisory opinion to that effect.

Ultimately, Envoy's problem was not caused by reliance on the Form Order.  Either Envoy did not appreciate the significance of the conversion to Chapter 7 and the effect of Hazelton, a well-established precedent in this district and directly on point, or Envoy ignored the conversion and relied solely on the Motion for Relief.  In sum, the automatic stay cannot be conjured from a strained negative implication of a court order where it does not already exist.

C. Effect of Intervening Lien Rights

Having found that Envoy did not record its foreclosure deed within the statutory safe harbor, the Court must now consider the effect of the Trustee's intervening assertion of lien rights.  As explained above, failure to record the foreclosure deed and affidavit within the safe harbor renders the sale "void and of no effect only as to liens or other encumbrances of record . . . between the day of the sale and the time of recording of said deed and affidavit."  N.H. RSA § 479:26, II.  The Trustee maintains that Envoy now holds the Property subject to the estate's intervening lien rights, arguing that Envoy's mortgage was extinguished by the recordation of the foreclosure deed.  Envoy, however, contends that if the foreclosure was "void and of no effect" as to the Trustee's lien rights, then it holds title to the Property under the foreclosure deed as well as an unextinguished first priority mortgage.

15

This Court does not write on a blank slate as the United States District Court for the District of New Hampshire previously addressed this issue in F.D.I.C. v. Holden. While acknowledging at the outset that "[t]he statute does not explicitly provide whether the power of sale mortgage is extinguished or remains in effect as to intervening interests," F.D.I.C. v. Holden, 1994 WL 263691, at *2, the District Court ultimately held that the assertion "that the recording of the foreclosure deed extinguishes [a] mortgage [under these circumstances] does not comport with the plain meaning of the statute." Id. at *3. The District Court reasoned:

> Since the foreclosure sale is "void and of no effect" as to Holden's mortgage, it is reasonable to conclude from the plain meaning of the statutory language that the status quo existing just prior to the foreclosure sale remains, namely, that the FDIC has a mortgage interest that is unforeclosed as to Holden's intervening mortgage and that is senior to Holden's mortgage because it was recorded prior thereto. Thus, when the FDIC recorded the foreclosure deed, it took title as provided in RSA § 479:26, III "free and clear of all interest and encumbrances which do not have priority over such mortgage." Section III does not prohibit recording a foreclosure deed if there have been intervening interests but by its language anticipates a recording and preserves such interests.
>
> * * *
>
> Sections II and III must be read together and in concert if it is reasonable to do so given the statutory language. The foreclosure sale was "void and of no effect" as to the Holden mortgage. Therefore, the recording of the foreclosure deed did not extinguish the FDIC's mortgage because that mortgage was unforeclosed as to the Holden mortgage. Stated another way, the foreclosure deed could not have its usual legal effect (i.e., extinguishing a mortgage) when the statute declares a condition precedent to that effect (i.e., the foreclosure sale) to be "void and of no effect." Furthermore, the recording of the foreclosure deed did not alter the position of the FDIC's mortgage as senior to Holden's mortgage, a fact established by their recording dates.

Id.

The District Court also rejected the suggestion that the doctrine of merger of title applied to extinguish the mortgage upon the recording of the foreclosure deed. Generally, the "merger doctrine provides that when legal and equitable titles to property become joined, 'so that the

16

owner has the whole title, the mortgage is merged by the unity of possession.'" Id. at 4 (quoting Factors' and Traders' Ins. Co. v. Murphy, 111 U.S. 738, 744 (1884)). Relying on Stantons v. Thompson, 49 N.H. at 279, the District Court held under New Hampshire Law

> there can be no merger as a matter of law in situations where there is another interest recorded after the sale but before the recording of the deed. Because another interest in the property has been established, the entire legal and equitable titles cannot be united in the same person.

Id. (internal citation omitted). It also recognized that the merger doctrine will not apply "when the mortgagee shows it did not intend merger to occur," or "when merger would be disadvantageous to the mortgagee." Id. (citing Stendardo v. Federal Nat'l Mortgage Ass'n, 991 F.2d 1089, 1098–99 (3d Cir. 1993)). In closing, the District Court expressly rejected the contention that these equitable exceptions to the merger doctrine are inconsistent with N.H. RSA § 479:26, noting that the right to foreclose is a form of equitable relief and that "[l]ogic compels the conclusion that the legislature would not intend the statute to operate to cause the mortgagee to lose title and the ability to be paid in full on the existing debt." Id. at *5-6.

Nevertheless, the Trustee asserts that Holden was wrongly decided. Citing the differences in the statutory language, he posits that the 1991 amendment to N.H. RSA § 479:26, II supplanted the common law presumption against merger of title. The prior version of section II provided:

> Failure to record said deed and affidavit within the statutory period shall render the sale void and of no effect *if there are* liens or other encumbrances of record with the register of deeds for said county intervening between the day of the sale and the time of recording of said deed and affidavit.

N.H. RSA § 479:26, II (1977) (emphasis added). Under this version of the statute, if the mortgagee failed to record the foreclosure deed and affidavit within the safe harbor, which the

17

Trustee characterizes as a statutory mandate based on the word "shall" in section I,[18] and an intervening lien was recorded, the foreclosure was void as to all parties. The mortgagee, however, remained free to re-foreclose the property. The 1991 amendment altered the language of section II such that it now provides:

> Failure to record said deed and affidavit within 60 days after the sale shall render the sale void and of no effect *only as to* liens or other encumbrances of record with the register of deeds for said county intervening between the day of the sale and the time of recording of said deed and affidavit.

N.H. RSA § 479:26, II (emphasis added). According to the legislative history, the purpose of the amendment was to "clarif[y] the ramifications of failing to record the deed and affidavit within 60 days after the foreclosure sale with regard to intervening creditors." House Journal No. 21, May 8, 1991, p. 917.

The Trustee argues that the because the foreclosure is now void "only as to" intervening liens, the legislature intended that the consequence of failing to comply with the statutory directive is that a merger would take place, extinguishing the mortgage and leaving the property subject to an intervening lien. Notably, he cites no authority in support of this assertion. In fact, the only authority on the subject is Holden, which expressly rejects his interpretation of the statute.

Notwithstanding the Trustee's arguments, the Court finds Holden well-reasoned and persuasive. Moreover, as a general rule of statutory construction, courts "will not interpret a statute to abrogate the common law unless the statute clearly expresses that intent." State v. Elementis Chem., 152 N.H. 794, 803 (2005). As explained by the District Court in Holden, there is a common law presumption against merger where it would be disadvantageous for the mortgagee and where there is an intervening lien. 1994 WL 263691, at * 4. While it is clear that

---

[18] *see* N.H. RSA § 479:26, I.

the amendment changed the effect of an intervening lien when a mortgagee fails to record the foreclosure deed within the safe harbor, the change does not clearly express an intent to abandon the common law presumptions. Accordingly, the Court finds that Envoy's mortgage was not extinguished by the recording of the foreclosure deed under the doctrine of merger. Therefore, Envoy's mortgage remains unforeclosed and senior in priority to the Trustee's asserted lien rights.

Ultimately, the Court concludes that the Trustee has not stated a claim for declaratory relief in his favor.

## VI. CONCLUSION

For the reasons articulated above, the Trustee has not stated a claim upon which relief can be granted. Accordingly, the Motion to Dismiss is granted. This opinion constitutes the Court's findings of fact and conclusions of law in accordance with Fed. R. Bankr. P. 7052. The Court will issue a separate order consistent with this opinion.

ENTERED at Manchester, New Hampshire.


Dated: June 28, 2016                /s/ Bruce A. Harwood
                                    Bruce A. Harwood
                                    Chief Bankruptcy Judge